MAILED TO COUNSEL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/1/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

PATRICK GRAHAM, LANCE E. TUCKER,    :    08 Civ. 4363 (LAP)
RICKY PANAYOTY, GREGORY MOYE, CARL  :
MILLER, DENNIS RANSOM, and          :    MEMORANDUM and ORDER
NATHANIEL WILSON,                   :
                                    :
                Plaintiffs,         :
                                    :
        v.                          :
                                    :
KNEBEL, Correctional Officer; PENN, :
Correctional Officer; SIMMS,        :
Correctional Officer; JIMENEZ,      :
Correctional Officer; and Sergeant  :
KEVIN EWALD,                        :
                                    :
                Defendants.         :
                                    :
------------------------------------X

LORETTA A. PRESKA, Chief United States District Judge:

    Plaintiffs Patrick Graham, Lance E. Tucker, Ricky Panayoty, Gregory Moye, Carl Miller, Dennis Ransom, and Nathaniel Wilson bring this action pro se against Corrections Officers Knebel, Penn, Simms, Jimenez, and Corrections Sergeant Ewald. Plaintiffs allege violations of the Civil Rights Act, 42 U.S.C. § 1983, for violations of the First and Fourteenth Amendments; and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc-1 et seq. ("RLUIPA"). Defendants now move to dismiss the Complaint under Fed. R. Civ. P.

12(b)(1), 12(b)(6), and 12(c). For the reasons enumerated below, the motion is GRANTED.

I.   BACKGROUND

Plaintiffs are incarcerated at Mid-Orange Correctional Facility ("Mid-Orange"). Plaintiffs assert that they were subject to unprofessional conduct, disrespect, retaliation, "religious violations," and discrimination by Defendants arising out incidents that occurred in September 2006. The Complaint's[1] allegations can be grouped into four different incidents.

A.   Incident 1: Alleged Unprofessional Conduct
     and Disrespect

Plaintiffs Graham, Moye, and Panayoty allege that on September 25, 2006, they were among a group of Nation of Islam ("NOI") inmates waiting to be admitted to the Mid-Orange mess hall at the conclusion of a day-long fast during the feast of Ramadan.[2] (Complaint ¶¶ 1, 29, 43.) They allege that defendant Corrections Officer Knebel acted unprofessionally by verbally threatening and disrespecting

---

[1] In addition to the Complaint, the Court has considered the documents attached to the Complaint as an exhibit or incorporated into the Complaint by reference. See Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).

[2] During Ramadan, Muslims fast between dawn and sunset. See generally Makin v. Colorado Dep't of Corr., 183 F.3d 1205, 1208 (10th Cir. 1999).

2

them. Specifically, Plaintiffs allege that Corrections Officer Knebel, while checking the names of inmates authorized for admittance to the mess hall, had "seemed to be having trouble locating the names" of the authorized inmates, resulting in a delay of "approximately fifteen minutes." (Id. ¶¶ 30, 43.) One inmate suggested that the Corrections Officer take all of the inmates' identification cards and thereafter verify if the inmates were authorized to enter. (Id. ¶¶ 2, 44.) Plaintiffs allege Corrections Officer Knebel "became hostile," instructed the inmates not to tell him how to perform his duties, and stated "If you want me to start a riot, I'll start a riot." (Id. ¶¶ 30, 44.) The assembled inmates did not respond to Corrections Officer Knebel's remarks. (Id. ¶ 30.) Plaintiffs allege that he continued to check the inmates' authorization to enter the mess hall "one at a time;" thereupon, the inmates were "processed and allowed to enter . . . to break [their] fast." (Id.)

    B.    <u>Incident 2: Retaliation, Religious Violations, Discrimination</u>

Plaintiffs Graham, Moye, Miller, and Wilson allege that on September 26, 2006, Corrections Officers Knebel, Penn, Simms, and Jimenez retaliated against them for filing grievances concerning Incident 1. (Id. ¶¶ 9-14, 87.)

3

Plaintiffs claim that while they were leaving the mess hall, Corrections Officer Knebel approached to inquire why inmate LeBron, a non-party, filed a grievance against Corrections Officer Knebel. (Id. ¶ 9.) Plaintiffs allege that the Corrections Officers surrounded LeBron and singled out Graham and Moye by directing them to stay back from the officers. (Id. ¶¶ 11, 87.) Graham alleges that he was "completely ignored" when he requested to see a supervisor after Corrections Officer Penn requested to see the inmate's identification card. (Id. ¶ 12.) Graham envisioned that as a member of the Inmate Liaison Committee, he would receive "more respect" from the Corrections Officer. (Id.) Plaintiffs assert that Corrections Officer Knebel said "we can get the bus and take all of you out" and that he asked Miller whether he was the leader of NOI. (Id. ¶¶ 13-14.)

    C.    <u>Incident 3: Alleged Retaliation by Chaplain</u>

Plaintiffs Graham and Moye allege that on September 26 or 27, 2006, non-party Mid-Orange Chaplain, Imam Mahmood, delayed NOI members in breaking their Ramadan fast. (Id. ¶¶ 24-25, 33-34.) Plaintiffs allege that the Chaplain told NOI members they could not head from the Mosque to the mess hall until 7:15 p.m., rather than the administratively prescribed time of 7:00 p.m., because the rest of the

4

general population had a movement at 7:00 p.m. (Id.)

    D.    Incident 4: Alleged Retaliation by Sgt. Ewald

Plaintiffs Graham, Panayoty, Ransom, Wilson, Tucker, and Miller allege that on September 28, 2006, Sgt. Ewald retaliated against them by delaying the NOI inmates from breaking their Ramadan fast. (Id. ¶¶ 26-27, 71, 80-82.) Sgt. Ewald informed Miller that "NOI inmates were going to be coming to the mess hall after the Sunni group finished their meal, cleaned up their areas and left the mess hall." (Id. ¶ 81). An officer communicated to the other plaintiffs that per the Sergeant's directive, the NOI inmates could not enter the mess hall until another group of inmates exited the area. (Id. ¶¶ 53, 72.) Plaintiffs claim that summoning them for dinner at 7:25 p.m., which ultimately delayed the start time of their meal by approximately forty minutes, violated the prison policy establishing the start time of their meal. (Id. ¶¶ 54, 73.) Plaintiffs allege that previous grievances and litigation with Sgt. Ewald prompted this purported retaliation. (Id. ¶¶ 69, 74.)

II.    DISCUSSION

    A.    Fed. R. Civ. P. 12(b)(6) Standard

In order to state a Section 1983 claim, Plaintiffs must allege that Defendants acted under the color of state

5

law to deprive Plaintiffs of a protected right, privilege, or immunity. See Kamholtz v. Yates County, No. 09-0026-cv, 2009 WL 3463481, at *1 (2d Cir. Oct. 29, 2009). When considering a Rule 12(b)(6) motion, this Court draws all reasonable inferences in Plaintiffs' favor and accepts as true the facts alleged in the Complaint. See In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d. Cir. 2007). To survive a motion to dismiss for failure to state a claim, a complaint must "plead 'enough facts to state a claim that is plausible on its face.'" Ruotolo v. City of N.Y., 514 F.3d 184, 188 (2d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Supreme Court has recently expounded upon this requirement:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). Accordingly, conclusory statements and legal conclusions are insufficient to state a plausible claim for relief. See Kamholtz, 2009 WL 3463481, at *1 (citing Iqbal, 129 S. Ct. at 1949-50). Because Plaintiffs are proceeding pro se, the

6

Court must liberally construe their pleadings "'to raise the strongest arguments that they suggest.'" McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). Nevertheless, even when the Court makes reasonable allowances for pro se litigants, they are not exempt from the usual pleading requirements. See Hudson v. Greiner, No. 99-12339, 2000 WL 1838324, at *1 (S.D.N.Y. Dec. 13, 2000).

B. Analysis

As a threshold matter, the Eleventh Amendment bars claims under Section 1983 for damages against Defendants in their official capacities, as New York State has not waived its sovereign immunity. See Davis v. New York, 316 F.3d 93, 101 (2d Cir. 2002); Verley v. Wright, No. 02-1182, 2007 U.S. Dist. LEXIS 71848, at *25-26 (S.D.N.Y. Sept. 27, 2007); Gutierrez v. Joy, 502 F. Supp. 2d 352, 362 (S.D.N.Y. 2007). Accordingly, these claims are DISMISSED under Fed. R. Civ. P. 12(b)(1).

1. RLUIPA

RLUIPA prohibits prisons from imposing a substantial burden on a prisoner's religious exercise unless the burden is the least restrictive means of furthering a compelling governmental interest. See 42 U.S.C. § 2000cc-1(a). For a burden to be substantial, a plaintiff

7

> must demonstrate that the government's action pressures him to commit an act forbidden by his religion or prevents him from engaging in conduct or having a religious experience mandated by his faith. In addition, this interference must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine.

Graham v. Mahmood, No. 05-10071, 2008 WL 1849167, at *14 (S.D.N.Y. 2008) (citation omitted) (internal quotation marks omitted); accord Westchester Day Sch. v. Vill. of Mamaroneck, 379 F. Supp. 2d 550, 557 (S.D.N.Y. 2005).

Even if the delays are viewed cumulatively, Plaintiffs' allegation that Defendants imposed a substantial burden by delaying the start time of their meals in Incidents 1, 3, and 4 falls far short of establishing a plausible RLUIPA claim. Plaintiffs do not allege that they have been required to commit an act forbidden by their religion, prevented from engaging in conduct mandated by the NOI faith, or otherwise substantially burdened in their religious exercise. These delays--the longest of which lasted approximately forty minutes--are trivial inconveniences properly ignored by this Court. See McEachin v. McGuinnisn, 357 F.3d 197, 203 n.6 (2d Cir. 2004). Compare Muhammad v. Harless, No. 5:08CV15-03-MU, 2008 U.S. Dist. LEXIS 16743, at *1-2 (W.D.N.C. Feb. 19, 2008) (dismissing claim that being

8

called late to break the Ramadan fast violated the First Amendment), aff'd, 279 Fed. App'x 246 (4th Cir. 2008); Rapier v. Harris, 172 F.3d 999, 1006 n.4 (7th Cir. 1999) (deeming that the unavailability of pork-free meals to Muslims on three occasions was de minimis); Young v. Bass, No. 01 C 7944, 2004 U.S. Dist. LEXIS 6023, at *15-16 (N.D. Ill. Apr. 6, 2004) (finding de minimis burden when inmate received meals late during Ramadan and was prevented from properly fasting for Ramadan for two days), with Ford v. McGinnis, 352 F.3d 582, 594 n.12 (2d Cir. 2003) (citing Rapier, 172 F.3d at 1006 n.4) (determining that whether an inmate's religious beliefs were burdened by a prison's refusal to serve a meal for the Eid ul Fitr feast was a question of fact but noting that the "feast is sufficiently unique in its importance within Islam to distinguish the present case from those in which the mere inability to provide a small number of meals commensurate with a prisoner's religious dietary restrictions was found to be a de minimis burden"). Plaintiffs' aspirations for an intransigently punctual start time for prison activities does not engender a federal cause of action, even if the temporarily delayed activities have a nexus to a religious exercise. Therefore, Plaintiffs RLUIPA claim is DISMISSED.

9

2.  First Amendment

Plaintiffs fail to plead a plausible First Amendment claim against Defendants.  In order to state a claim under the First Amendment, the inmates must demonstrate that Defendants' actions substantially burdened sincerely held religious beliefs.  See Pugh v. Goord, 571 F. Supp. 2d 477, 497 (S.D.N.Y. 2008) (applying substantial burden standard but noting disagreement on standard).  Giving deference to Plaintiffs who are pro se by assuming, without deciding, that they are not required to plead that Defendants' activities were a "substantial burden," Plaintiffs nevertheless fail to plead a plausible violation of the First Amendment.  As indicated in the analysis of the RLUIPA claim, supra Part II.B.1, Plaintiffs do not plausibly establish that the delays in being served food in accordance with the prison's administrative guidelines and Defendants' other actions constituted anything more than de minimis harms.  Accordingly, the First Amendment claim is DISMISSED.

3.  Retaliation

Plaintiffs fail to plead a plausible retaliation claim against Defendants.  In order to state a plausible retaliation claim, a plaintiff must allege:  (i) his speech or conduct at issue was protected; (ii) a defendant took an

10

adverse action against the plaintiff; and (iii) a causal connection exists between the protected speech and the adverse action. See Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004). For an action to be adverse, it must deter a similarly situated individual of ordinary firmness from exercising constitutional rights. See id. at 381.

Considering all of Plaintiffs' allegations, they have failed to state a plausible retaliation claim. "Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a retaliatory action taken against them is considered adverse." Pledger v. Hudson, No. 99-2167, 2005 U.S. Dist. LEXIS 5232, at *12-13 (S.D.N.Y. Mar. 31, 2005) (quoting Dawes v. Walker, 239 F.3d 489, 493 (2d Cir. 2001)) (internal quotation marks omitted). None of the alleged adverse actions, individually or collectively, would plausibly deter a similarly situated individual of ordinary firmness from exercising constitutional rights. See, e.g., Davis v. Goord, No. 01-0116, 2003 U.S. App. LEXIS 13030, at *14-16 (2d Cir. Feb. 10, 2003) (deeming that retaliation claims must be more than de minimis and that hostile treatment, insulting comments, disrespectful comments, and sarcastic comments directed towards inmate were not adverse); Pledger v. Hudson, 2005 U.S. Dist. LEXIS 5232, at

11

*12 ("[N]ot every unnecessary statement of a prison guard regarding an inmate's exercise of free speech violates the First Amendment.") (citation omitted) (internal quotation marks omitted); Abascal v. Fleckenstein, No. 06-CV-349S, 2008 U.S. Dist. LEXIS 60322 (W.D.N.Y. July 30, 2008) (holding that inmate failed to state an Eighth Amendment claim for isolated deprivations of entire meals).  The allegations of de minimis harms caused by the Defendants do not plausibly state a retaliation claim.  Accordingly, the retaliation claim is DISMISSED.

    4.   Harassment

Plaintiffs have not pleaded a plausible harassment claim.  The delays in receiving their meals as well as all of the other allegations of mistreatment are de minimis harms.  Therefore, they cannot form the basis of a harassment claim. See supra Part II.B.1; Montero v. Crusie, 153 F. Supp. 2d 368, 376 (S.D.N.Y. 2001) (finding that death threats and sexual solicitations made by a Corrections Officer were not actionable harassment, as verbal threats must be accompanied by physical force to be actionable under Section 1983).  Accordingly, Plaintiffs' harassment claim is DISMISSED.

12

III. CONCLUSION

This Court appreciates that prison officials must take due care when choreographing the safe movement of many groups of inmates, especially considering the violent histories of many inmates. Delays and perceived disrespect by Corrections Officers are an inevitable and inherent part of a prison environment. This Court refuses to turn every departure from the ideal or even standard operating procedures in a prison into a federal cause of action. Liberally construing the pleadings to raise the strongest arguments they suggest, Plaintiffs fail to show that they are entitled for relief for deprivation of any right protected by the Constitution or a federal law.

Even with the most liberal reading of the Complaint--which contains detailed factual accounts by Plaintiffs set forth in ninety-two paragraphs--there is no indication that a plausible claim for relief might be stated. Moreover, granting leave to amend would be futile, as no amendment would cure the deficiencies discussed above, and nothing suggests that Plaintiffs may actually have a viable claim that was inartfully or insufficiently pleaded.

Accordingly, Defendants' motion to dismiss [dkt. no. 22] is GRANTED, and Plaintiffs' claims are DISMISSED WITH PREJUDICE.

The Clerk of the Court shall mark this action CLOSED and all pending motions DENIED as moot.

SO ORDERED

Dated:   New York, New York

    November 30, 2009

                                    _____
                                    LORETTA A. PRESKA, Chief U.S.D.J.

14